UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LAURENCE SPIEGEL,

                                  Plaintiff,            Civil Action No. 09 Civ. 10581 (SHS)

        -against-

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY                DOCUMENT ELECTRONICALLY FILED

                              Defendant.
-----------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEDGWICK, DETERT, MORAN & ARNOLD LLP
*Attorneys for Defendant*
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY s/h/a THE HARTFORD
125 Broad Street, 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Michael H. Bernstein (MB 0579)
    *Of counsel*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................iii

PRELIMINARY STATEMENT..........................................................................................1

ARGUMENT.........................................................................................................................3

POINT I:

ALL MATERIAL FACTS OUTLINED IN DEFENDANT'S RULE 56.1
STATEMENT ARE DEEMED ADMITTED ......................................................................3

POINT II:

THE COURT SHOULD DISREGARD SPIEGEL'S IMPROPER
EXTRA-RECORD SUBMISSIONS....................................................................................4

    A.    SPIEGEL IMPROPERLY SUBMITS EVIDENCE
           OUTSIDE THE ADMINISTRATIVE RECORD ........................................4

    B.    THE INFORMATION CONTAINED IN ATTORNEY
           SKOVRONSKY'S SUPPORTING AFFIDAVIT IS INADMISSIBLE
           BECAUSE IT IS NOT BASED ON PERSONAL KNOWLEDGE
           AND IS IRRELEVANT................................................................................6

POINT III:

HARTFORD'S DECISION TO DENY SPIEGEL'S CLAIM FOR
CONTINUING LTD BENEFITS BASED ON A PHYSICAL CONDITION
WAS NOT ARBITRARY AND CAPRICIOUS .................................................................7

    A.    THE COURT SHOULD REVIEW HARTFORD'S DECISION
           UNDER  THE ARBITRARY AND CAPRICIOUS STANDARD
           OF REIVEW ................................................................................................7

    B.    HARTFORD'S DECISION TO DENY SPIEGEL'S CLAIM FOR
           CONTINUING LTD BENEFITS IS SUPPORTED BY SUBSTANTIAL
           EVIDENCE IN THE RECORD ..................................................................8

POINT IV:

SPIEGEL RECEIVED A FULL AND FAIR REVIEW OF HIS CLAIM.................................13

    A.    HARTFORD COMPLIED AND/OR SUBSTANTIALLY
           COMPLIED WITH ERISA'S NOTICE PROVISION ...............................13

B.     HARTFORD WAS NOT REQUIRED TO OBTAIN AN
IME TO EVALUATE SPIEGEL'S CLAIM FOR CONTINUING
PHYSICAL DISABILITY.................................................................................16

C.     HARTFORD REVIEWED ALL CO-MORBITIES TO
ENSURE THAT SPIEGEL WAS NOT ENTITLED TO LTD
BENEFITS UNDER THE PLAN ....................................................................17

D.     THE COURT MAY CONSIDER HARTFORD'S SUPPORTING
DECLARATIONS REGARDING STEPS TAKEN TO REDUCE
CONFLICT OF INTEREST..............................................................................20

CONCLUSION .......................................................................................................................22

CERTIFICATE OF SERVICE ...............................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Bendik* v. *Hartford Life Ins. Co.*,
  No. 03-Civ-8138(LAP), 2010 WL 2730465 (S.D.N.Y. July 12, 2010) ................................ 22

*Bergquist* v. *Aetna U.S. Healthcare*,
  289 F. Supp. 2d 400 (S.D.N.Y. 2003) ............................................................................. 5, 6

*Black & Decker Disability Plan* v. *Nord*,
  538 U.S. 822 (2003) .......................................................................................................... 12

*Boardman* v. *Prudential Ins. Co. Of Am.*,
  337 F.3d 9 (1st Cir. 2003) ................................................................................................ 10

*Burke* v. *Kodak Ret. Income Plan*,
  336 F.3d 103 (2d Cir. 2003) ............................................................................................ 13

*Conkright* v. *Frommert*,
  130 S.Ct. 1640 (2010) ...................................................................................................... 20

*Cook* v. *The New York Times Co. LTD* Plan,
  No. 02 Civ. 9154(GEL), 2004 WL 203111 (S.D.N.Y. Jan. 30, 2004) ............................ 10

*Davis* v. *Unum Life Ins. Co. of Am.*,
  444 F.3d 569 (7th Cir. 2006) ........................................................................................... 17

*Denmark* v. *Liberty Life Assurance Co. of Boston*,
  481 F.3d 16 (1st Cir. 2007) ............................................................................................... 8

*Fitzpatrick* v. *Bayer Corp.*,
  No. 04-5134, 2008 WL 169318 (S.D.N.Y. 2008) ............................................................. 8

*Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*,
  637 F.Supp.2d 132 (E.D.N.Y. 2009) ........................................................................... 21, 22

*Gannon* v. *Aetna Life Ins. Co.*,
  No. 05 Civ. 2160(JGK), 2007 WL 2844869 (S.D.N.Y. Sept. 27, 2007) ....................... 5, 16

*Giles* v. *Rhodes*,
  No. 94 Cv. 6385(CSH), 2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000) ........................... 7

*Greenberg* v. *Unum Life Ins. Co. of Am.*,
  No. CV-03-1396(CPS), 2006 WL 842395 (E.D.N.Y. Mar. 27, 2006) ............................... 5

*Hobson* v. *Metropolitan Life Ins. Co.*,
   574 F.3d 75 (2d Cir. 2009) ............................................................................9, 12, 13, 14, 16, 17

*Klecher* v. *Metropolitan Life Ins. Co.*,
   No. 01 Civ. 9566 (PKL), 2003 WL 21314033 (S.D.N.Y. June 6, 2003), *aff'd* 167 Fed. Appx. 287
   (2d Cir. 2006) ..............................................................................................................................4

*Kunstenaar* v. *Conn. Gen. Life Ins. Co.*,
   No. 88-884 WL 82450 (S.D.N.Y. Jul. 17, 1989) ......................................................................8

*Magee* v. *Metropolitan Life Ins. Co.*,
   No. 07-cv-88169(WHP), 2009 WL 3682423 (S.D.N.Y. Oct. 15, 2009) ....................................6, 9, 10

*Maniatty* v. *Unumprovident Corp.*,
   218 F. Supp. 2d 500 (S.D.N.Y. 2002) ......................................................................................16

*Maskara* v. *First UNUM Life Ins. Co.*,
   No. 03 Civ. 498 (MHD), 2004 WL 1562722 (S.D.N.Y. Jul. 13, 2004) ....................................4

*McCauley* v. *First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008) ....................................................................................................21

*Metropolitan Life Insurance Co.* v. *Glenn*,
   128 S.Ct. 2343 (2008) ........................................................................................................20, 21

*Miller* v. *Hartford Life and Accident Ins. Co.*,
   No. 08-cv-2014(RWS), 2010 WL 1050006 (N.D. Ga. Mar. 17, 2010) ...................................22

*Miller* v. *United Welfare Fund*,
   72 F.3d 1066 (2d Cir 1995) ..................................................................................................4, 5

*O'Sullivan* v. *Prudential Ins. Co. Of Am.*,
   No. 00 Civ. 7915 (KNF), 2002 WL 484847, (S.D.N.Y. Mar. 29, 2002) ...............................11

*Padilla* v. *Manlapaz*,
   643 F.Supp. 2d 302 n.8 (E.D.N.Y. 2009) ................................................................................3

*Parisi* v. *UnumProvident Corp.*,
   No. 3:03cv01425(DJS), 2007 WL 4554198 (D. Conn. Dec. 21, 2007)...................................10

*Perezaj* v. *Building Serv. 32B-J Pension Fund*,
   No. CV-04-3768, 2005 WL 1993392 (E.D.N.Y. Aug. 17, 2005) .............................................5

*Porter* v. *Prudential Ins. Co.*,
   05 Civ. 6113 (KMK) (RLE), 2006 WL 2038457 (S.D.N.Y. Jul. 18, 2006) *reconsideration den'd* 2006
   WL 2242770 (S.D.N.Y. Aug. 2, 2006)......................................................................................5

*Richard* v. *Fleet Financial Group Ins. LTD Employee Benefits Plan*,
   No. 09-2284-cv, 2010 WL 625003 (2d Cir. Feb. 24, 2010) .....................................................5

*Rosenberg* v. *Silver*,
  762 F.2d 255 (2d Cir. 1985) ......................................................................................6

*Salute* v. *Aetna Life Ins Co.*,
  No. 04 CV 2035(TCP)(MLO), 2005 WL 1962254 (E.D.N.Y. Aug. 9, 2005)...............................5, 6

*Schnur* v. *CTC Communication Corp. Group Disability Plan*,
  No. 05-CV-3297 (RJS), 2010 WL 1253481 (S.D.N.Y Mar. 29, 2010) ...............................9, 13, 14, 21

*Sellers* v. *M.C. Floor Crafters, Inc.*,
  842 F.2d 639 (2d Cir. 1988) ......................................................................................6

*Solaas* v. *Delta Family-Care Disability and Survivorship Plan*,
  No. 03-8680 WL 735965 (S.D.N.Y. Mar. 29, 2005).........................................8, 9, 10, 11, 12

*Suren* v. *Metropolitan Life Ins. Co.*,
  No. 07-4439, 2008 WL 4104461, (E.D.N.Y. Aug. 29, 2008)........................................9

*United States* v. *Bosuri*,
  530 F.2d 1105 (2d Cir. 1975) ......................................................................................6

*Watt* v. *N.Y. Botanical Garden*,
  No. 98-1095, 2000 WL 193626 (S.D.N.Y. Feb. 16, 2000) ....................................................3

*Williams* v. *Aetna Life Ins. Co.*,
  509 F.3d 317 (7th Cir. 2007) ....................................................................................10

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA")
  §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ................................................................1

ERISA Section 503(1), 29 U.S.C. §1133(1) ................................................................13

Fed. R. Evid. 401 ......................................................................................................7

Fed. R. Evid. 802 ......................................................................................................6

Fed. R. Civ. P. 56(e) ............................................................................................3, 6

**Local Rules**

Local Rule 56.1(d) ....................................................................................................3

## PRELIMINARY STATEMENT

Defendant Hartford Life and Accident Insurance Company ("Hartford") respectfully submits this Memorandum of Law in Opposition to plaintiff Laurence Spiegel's ("Spiegel") Cross-Motion for Summary Judgment and in Reply in Further Support of Defendant's Motion for Summary Judgment.   Hartford previously moved for an order granting summary judgment dismissing Spiegel's Complaint seeking continuing long term disability ("LTD") benefits under the Factset Research Systems Inc. ("FRSI") LTD Plan (the "Plan") pursuant to Employee Retirement Income Security Act of 1974 ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) on the grounds that its determination denying Spiegel's claim for continuing LTD benefits after September 22, 2008 was supported by substantial evidence and was not arbitrary and capricious.   Spiegel filed opposition to that motion and simultaneously moved for summary judgment awarding him LTD benefits under the Plan, arguing that Hartford's determination was arbitrary and capricious.   It is respectfully submitted that Spiegel's motion should be denied because it is both procedurally and substantially deficient and that Hartford's motion should be granted for all the reasons articulated in its motion and as set forth herein.

As a preliminary matter, both Spiegel's motion and his opposition fail to satisfy basic procedural requirements set forth in the Local Rules of the U.S. District Court for the Southern District of New York and the Federal Rules of Civil Procedure.  Specifically, the factual assertions in Spiegel's Rule 56.1 Statement do not cite to any admissible evidence as support for either his affirmative statements of supporting material facts or his challenges to the facts set forth by Hartford in its Rule 56.1 Statement.  As a result, all of the factual assertions set forth in Hartford's Rule 56.1 statement should be deemed admitted.  Similarly, Spiegel improperly attempts to accrete the substantive record with the Social Security Administration's ("SSA") April 25, 2010 decision and the Center for Disease Control's ("CDC") criteria for chronic fatigue syndrome ("CFS").  Neither of

1

these documents were part of the administrative record at the time Hartford rendered its claim determination and thus were not available for its consideration or review at the time Spiegel's claim was being adjudicated. Therefore, those documents are not properly before the Court. Spiegel's attorney's Affidavit is similarly flawed since it purports to discuss these extra-record documents. The Court should disregard these improper submissions.

Notably, while Spiegel concedes that this Court's review should be done pursuant to the arbitrary and capricious standard, nothing in Spiegel's cross-motion or opposition provides any basis for his argument that Hartford's determination was arbitrary or capricious. Rather, the administrative record reveals that Spiegel failed to provide sufficient objective medical evidence that he was functionally unable to perform the essential duties of his occupation as a telecommunication engineer due to symptoms associated with CFS or his other claimed maladies. Instead of addressing this deficiency, Spiegel mischaracterizes the basis for Hartford's claim determination by arguing that it denied his claim for continuing LTD benefits because it required him to provide objective evidence that he had CFS, when such is not the case. The record unequivocally demonstrates that none of Spiegel's treating physicians ever performed any physical examinations or objective tests to substantiate his claimed functional disability. Rather, Spiegel submitted nothing more than his own and his physician's conclusory statements of disability, which Hartford found to be insufficient to support his claim. Nothing about that determination was arbitrary and capricious.

In his motion and opposition, Spiegel claims that there were deficiencies in Hartford's claim review process that resulted in his being denied a full and fair review. These claims include his complaints that Hartford did not advise him of the proof that he should submit on administrative appeal to prove his claim and that Hartford did not obtain an Independent Medical Examination ("IME") of Spiegel. These arguments are specious. Hartford was, at all times, in compliance, or substantial compliance, with all applicable notice rules and Spiegel was clearly advised, when his

claim was initially denied, what sort of proof he needed to submit on appeal to better support his claim.  Notwithstanding that notice, Spiegel failed to submit such proof on administrative appeal. And, while Spiegel argues that Hartford's decision to not have him appear for an IME reflects a flawed review process, it is well-settled in this Circuit that an IME is not required in order for a claim fiduciary to provide a full and fair review.  In fact, the record reflects that Hartford retained multiple medical peer review consultants to perform independent medical reviews of the co-morbidities related to Spiegel's CFS, which further proves that his claim was given a full and fair review.  Given the foregoing Hartford's motion for summary judgment should be granted in its entirety and Spiegel's motion for summary judgment should be denied in its entirety.

**ARGUMENT**

**POINT I**

**ALL MATERIAL FACTS OUTLINED IN DEFENDANT'S
RULE 56.1 STATEMENT ARE DEEMED ADMITTED**

"Plaintiff's Statement Pursuant to Rule 56.1" fails to include any citations to the administrative record for any of the statements asserted.  As such, it is not in compliance with the Local Rule and is completely insufficient to either support his motion for summary judgment or oppose Hartford's motion for summary judgment.  Specifically, Local Rule 56.1(d) requires that "[e]ach statement [of material fact] by a *movant or opponent* pursuant to [this rule] must *be followed by citation to evidence which would be admissible*, as required by Federal Rule of Civil Procedure 56(e)." (emphasis added); *see Padilla* v. *Manlapaz,* 643 F.Supp. 2d 302, 308 n.8 (E.D.N.Y. 2009) (finding a disputed factual statement in plaintiff's Rule 56.1 statement to be deemed admitted because although denied by defendant, that denial was not followed by an appropriate citation supporting admissible proof); *see also, Watt* v. *N.Y. Botanical Garden*, No. 98-1095, 2000 WL 193626, at *1 n. 1 (S.D.N.Y. Feb. 16, 2000) (stating that where there are no citations to the factual assertions in the Rule 56.1 statement, the court may disregard that assertion).  Since none of Spiegel's factual assertions either in

support of his motion, or in opposition to Hartford's motion, include proper citation to supporting proof, all of the facts in Hartford's Rule 56.1 Statement should be deemed admitted and all of the facts asserted by Spiegel, both in support of his motion and in opposition to Hartford's motion, should be disregarded by the Court.  Accordingly, Plaintiff's motion should be denied in its entirety and Hartford's motion for summary judgment, which is fully supported by admissible evidence, should be granted in full.

**POINT II**

**THE COURT SHOULD DISREGARD**
**SPIEGEL'S IMPROPER EXTRA-RECORD SUBMISSIONS**

**A.      SPIEGEL IMPROPERLY SUBMITS EVIDENCE**
**OUTSIDE THE ADMINISTRATIVE RECORD**

Case law in this Circuit unambiguously and uniformly holds that when an ERISA Plan grants a claim administrator discretionary authority to make benefit determinations (as the FRSI Plan did here), the administrator's decision is to be reviewed under the arbitrary and capricious standard and the court's review "is limited to the administrative record."  *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir 1995).  Since Spiegel's Amended Complaint is limited to a claim challenging Hartford's denial of his claim for LTD benefits under ERISA, the Court's review of this matter is limited to the documents contained in the administrative record before Hartford at the time it issued its final determination on administrative appeal on August 17, 2009.  *See Maskara* v. *First UNUM Life Ins. Co.*, No. 03 Civ. 498 (MHD), 2004 WL 1562722 (S.D.N.Y. Jul. 13, 2004) ("The record is properly viewed as comprising all materials in the case up to the point at which the administrator made its final decision."); *Klecher* v. *Metropolitan Life Ins. Co.*, No. 01 Civ. 9566 (PKL), 2003 WL 21314033 (S.D.N.Y. June 6, 2003), *aff'd* 167 Fed. Appx. 287 (2d Cir. 2006) ("Under the arbitrary and capricious standard of review, a district court is limited in scope of its review and may consider only the administrative record (i.e., the Claim File) before the administrator when the administrator made

its decision denying plaintiff's benefits."); *Greenberg* v. *Unum Life Ins. Co. of Am.*, No. CV-03-1396(CPS), 2006 WL 842395, *8 (E.D.N.Y. Mar. 27, 2006) (quoting *Miller*, 72 F.3d at 1071 to state "[f]inally, in reviewing the administrator's decision, 'district courts may consider only the evidence that the fiduciaries themselves considered.'"); *Perezaj* v. *Building Serv. 32B-J Pension Fund*, No. CV-04-3768, 2005 WL 1993392, *7 (E.D.N.Y. Aug. 17, 2005) (concluding that "the Court is without authority to consider evidence that was not part of the record before the Appeals Committee."); *Gannon* v. *Aetna Life Ins. Co.*, No. 05 Civ. 2160(JGK), 2007 WL 2844869, *11 n.4  (S.D.N.Y. Sept. 27, 2007); *Salute* v. *Aetna Life Ins Co.*, No. 04 CV 2035(TCP)(MLO), 2005 WL 1962254, at *6 (E.D.N.Y. Aug. 9, 2005); *Bergquist* v. *Aetna U.S. Healthcare*, 289 F. Supp. 2d 400, 411 (S.D.N.Y. 2003).

While courts reviewing ERISA benefit denials have considered extra-record evidence submitted by the parties "to test whether the administrative claim record before the court is accurate and complete and to explain, where necessary, its meaning," as well as to evaluate whether the administrator's decision-making was impacted by a conflict of interest, that is not the purpose of Spiegel's submissions. *Porter* v. *Prudential Ins. Co.*, 05 Civ. 6113 (KMK) (RLE), 2006 WL 2038457, *1 (S.D.N.Y. Jul. 18, 2006) *reconsideration den'd* 2006 WL 2242770 (S.D.N.Y. Aug. 2, 2006) (quoting *Miller*, 72 F.3d at 1071).  Here, the SSA award letter attached to Attorney Skovronsky's Affidavit and the CDC criteria for CFS attached to plaintiff's Memorandum of Law were not part of the administrative record and thus were not reviewed by Hartford during administrative appeal.  These documents have no bearing on the completeness of the administrative record or whether Hartford's decision-making was influenced by a conflict of interest.  Thus, Spiegel is simply attempting to impermissibly accrete the record with additional proof.  This extra-record evidence cannot be considered by this Court on its review of Hartford's benefit determination and should therefore be disregarded.  *See Richard* v. *Fleet Financial Group Ins. LTD Employee Benefits Plan*, No. 09-2284-cv, 2010 WL 625003, *1, n.1 (2d Cir. Feb. 24, 2010) (refusing to consider an affidavit submitted by claimant's husband

because it "was not supplied to the [claim administrator] during the claims process and is outside of the administrative record."); *Magee* v. *Metropolitan Life Ins. Co.*, No. 07-cv-88169(WHP), 2009 WL 3682423, *2 (S.D.N.Y. Oct. 15, 2009); *Salute*, 2005 WL 1962254, at *6; *Bergquist,* 289 F. Supp. 2d 400.

**B.    THE INFORMATION CONTAINED IN ATTORNEY SKOVRONSKY'S SUPPORTING AFFIDAVIT IS INADMISSIBLE BECAUSE IT IS NOT BASED ON PERSONAL KNOWLEDGE AND IS IRRELEVANT**

Fed. R. Civ. P. Rule 56(e) provides that: "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Controlling law from the Second Circuit holds that statements in an attorney's affirmation that are not based on personal knowledge are insufficient to support or oppose a motion for summary judgment.  *See Sellers* v. *M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (finding the attorney affirmation insufficient to support a motion for summary judgment); *Rosenberg* v. *Silver*, 762 F.2d 255, 256 (2d Cir. 1985) (finding that the attorney affirmations "could not be used to support the summary disposition of plaintiffs' claims."); *United States* v. *Bosuri*, 530 F.2d 1105, 1111 (2d Cir. 1975) (reversing the district court and ruling that "the attorney's affidavit was not a permissible substitute for personal knowledge of the [party]" on a motion for summary judgment).  Since Attorney Skavronsky's Affidavit does not set forth a basis for his knowledge of these facts, his Affidavit and the attached documents are inadmissible hearsay, which is insufficient as a matter of law to support Spiegel's motion for summary judgment or to raise a triable issue of fact in opposition to Hartford's motion. Fed. R. Evid. 802.

Moreover, the purported evidence contained in Attorney Skavronsky's Affidavit is inadmissible because it is irrelevant.  In order for statements in an affidavit to be admissible they must be relevant.  *See Giles* v. *Rhodes*, No. 94 Cv. 6385(CSH), 2000 WL 1425046 (S.D.N.Y. Sept. 27,

2000) (striking medical expert testimony where the opinion did not relate to the injury alleged).

"Relevant Evidence" is:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 401. Attorney Skovronsky concedes in his Affidavit, this information is "irrelevant."[1]

Moreover, as discussed in Point II. A*., supra*, the SSA decision was not part of the administrative record and thus this extra-record evidence cannot be considered by this Court on its judicial review of Hartford's benefit determination. Accordingly, Attorney Skavronsky's Affidavit and Exhibit may not be considered because they are inadmissible.

## POINT III

### HARTFORD'S DECISION TO DENY SPIEGEL'S CLAIM FOR CONTINUING LTD BENEFITS BASED ON A PHYSICAL CONDITION WAS NOT ARBITRARY AND CAPRICIOUS

### A. THE COURT SHOULD REVIEW HARTFORD'S DECISION UNDER THE ARBITRARY AND CAPRICIOUS STANDARD OF REIVEW

Spiegel concedes that the governing LTD Plan granted Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (0020). Accordingly, it is undisputed that this Court should review Hartford's decision to terminate LTD benefits under the arbitrary and capricious standard of review. The Court's attention is respectfully referred to Point I of Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, dated May 18, 2010 (Doc. No. 14) ("Hartford's Memorandum of Law"), for a full discussion of the applicable standard of review.

---

[1] To the extent the 2010 SSA decision has any relevance, it establishes that Spiegel was found not "disabled" under the SSA regulations before June 2009, which is nine months after September 22, 2008, when Hartford terminated benefits and therefore, only serves to demonstrate that Hartford's decision was not arbitrary and capricious. (0146).

**B.**   **HARTFORD'S DECISION TO DENY SPIEGEL'S CLAIM FOR CONTINUING LTD BENEFITS IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD**

As discussed at length in Hartford's Memorandum of Law, Spiegel has the burden of proving that he meets the Plan's definition of disability.  (Doc. No. 14, Point II).   In his motion/opposition, Spiegel contends that Hartford's determination to deny him continuing LTD benefits was based on Hartford's requirement that he submit objective proof of his CFS condition, which he argues, can only be diagnosed from subjective symptoms.  But this purported basis for denial of his claim cannot be found anywhere in Hartford's determination letters.  Indeed, Spiegel's argument is utterly without merit because the administrative record reflects that Spiegel's claim was denied because he failed to submit any objective proof of a functional disability caused by either fatigue or by cognitive deficits, which he claimed were his disabling symptoms.  Spiegel's "straw man" argument is nothing more than a ploy to divert the Court's attention from the fact that the administrative record contains no objective proof that he was rendered physically impaired by his purported conditions.

Manifestly, Hartford did not require that Spiegel provide objective proof of his CFS diagnosis because it is well-established that CFS cannot be proven by an objective test.  But there is a "distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as fibromyalgia that does not lend itself to objective verification, and requiring objective evidence that plaintiff is unable to work which is allowed."  *See Fitzpatrick* v. *Bayer Corp.*, No. 04-5134, 2008 WL 169318, at *11 (S.D.N.Y. 2008) (citing *Denmark* v. *Liberty Life Assurance Co. of Boston*, 481 F.3d 16, 37 (1st Cir. 2007); *see also Solaas* v. *Delta Family-Care Disability and Survivorship Plan*, No. 03-8680, 2005 WL 735965, at *4 (S.D.N.Y. Mar. 29, 2005); *Kunstenaar* v. *Conn. Gen. Life Ins. Co.*, No. 88-884, 1989 WL 82450, at *2 (S.D.N.Y. Jul. 17, 1989).

In Spiegel's case, Hartford requested objective proof demonstrating that Spiegel's symptoms prevented him from working.  At the initial review stage, David Knapp, M.D., an independent medical peer reviewer, asked Spiegel's treating doctors for objective proof that Spiegel was physically impaired by symptoms of CFS.  (0649).  Hartford also explained in its initial denial letter that "you do not have a clinical or subjectively rated degree of impairment from a physical condition that alone would preclude you from engaging in physical activity."  (1050).  Thus, when Spiegel submitted his administrative appeal, it was clear to both him and his treating physicians that they needed to provide objective proof explaining how Spiegel's subjective symptoms prevented him from working as a telecommunication engineer.

Requiring a claimant to prove by objective evidence that he is impaired by his subjective complaints is well-accepted as a reasonable requirement by a claims administrator, such as Hartford. Indeed, the Second Circuit has held that "it is not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims of disability."  *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 82, 88 (2d Cir. 2009); *see Solaas*, 2005 WL 735965, at *4; *see Schnur* v. *CTC Communication Corp. Group Disability Plan*, No. 05-CV-3297 (RJS), 2010 WL 1253481, *14 (S.D.N.Y Mar. 29, 2010); *Suren* v. *Metropolitan Life Ins. Co.*, No. 07-4439, 2008 WL 4104461, at *11 (E.D.N.Y. Aug. 29, 2008). Here, Hartford was entitled to require objective proof demonstrating the limitations of Spiegel's alleged condition.  This is particularly so because the record reflects that despite his subjective complaint of disabling symptoms that prevented him from engaging in sedentary work, Spiegel was noted to be participating in salsa dancing and drum lessons.

In *Magee* v. *Metropolitan Life Ins. Co.*, 632 F. Supp. 2d 308, 318 (S.D.N.Y. 2009), the district court addressed whether it is reasonable for an ERISA plan claim administrator to require objective proof of the level of impairment caused by CFS.  The court found this requirement to be entirely

reasonable because "how much an individual's degree of pain or fatigue limits his functional capabilities[ ]can be objectively measured." *Id.* (quoting *Williams* v. *Aetna Life Ins. Co.*, 509 F.3d 317, 323 (7th Cir. 2007)).  Numerous other courts have recognized that a claimant may not be able to provide objective evidence of the existence of a condition, such as with CFS, which is diagnosed clinically based on subjective symptoms, the claimant must still be able to demonstrate his disabling limitations by submitting objective evidence specifying the manner in which they interfere with his functional abilities.  *See Boardman* v. *Prudential Ins. Co. Of Am.*, 337 F.3d 9, 16, n. 5 (1st Cir. 2003) ("While the diagnoses of [CFS] may not lend themselves to objective clinical finds, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *Parisi* v. *UnumProvident Corp.*, No. 3:03cv01425(DJS), 2007 WL 4554198, *11 (D. Conn. Dec. 21, 2007); *Cook* v. *The New York Times Co. LTD* Plan, No. 02 Civ. 9154(GEL), 2004 WL 203111, *4 (S.D.N.Y. Jan. 30, 2004) ("It is also reasonable to insist on some objective measure of claimant's capacity to work, so long as that measure is appropriate as applied to each specific condition."). Accordingly, it was reasonable for Hartford to expect that Spiegel could provide objective evidence of the severity of his condition by submitting results from tests designed to measure these complaints—such as the level of fatigue on a treadmill, or by submitting the results of neuropsychological testing to demonstrate a lack of concentration due to fatigue, or even submitting something as simple as physical examination notes identifying atrophy of muscles due to lack of use caused by disabling fatigue.

In *Solaas*, *supra,* plaintiff similarly alleged that she was unable to work due to CFS, but was unable to demonstrate that she was rendered functionally unable to perform the material duties of her own occupation by symptoms relating to her alleged condition.  2005 WL 735965, at *4.  In its decision upholding the claim administrator's decision denying her LTD benefit claim, the district court stated that "[t]he question of whether Plaintiff can return to her former job is separate from

the presence or severity of her CFS." *Id.* The court granted defendant's motion for summary judgment because the only proof plaintiff submitted in support of her claimed disability was evidence of her subjective complaints, as opposed to objective proof demonstrating how her symptoms prevented her from returning to work. *Id.; see also O'Sullivan* v. *Prudential Ins. Co. Of Am.*, No. 00 Civ. 7915 (KNF), 2002 WL 484847, **9-10 (S.D.N.Y. Mar. 29, 2002) (finding that plaintiff failed to show how she was disabled by CFS).

Here, Spiegel's claim submissions suffer from the same deficiencies as the plaintiff in *Solaas.* Pursuant to the terms of the LTD Plan, "disability" is defined as the inability to "perform one or more of the essential duties of your occupation." (0008, 0021). Spiegel's submissions did not include any physical examination or objective tests identifying the nature, extent or scope of his claimed disabling fatigue or cognitive deficiencies. Indeed, the only medical records Spiegel submitted in support of his claim of continuing disability were from his treating physician, Dr. David Duffy. (0555-0597, 0665, 0672-0673, 0710-0721). But Dr. Duffy's office notes merely parroted Spiegel's subjective complaints of fatigue. There is no indication anywhere in these notes about how these complaints prevented him from performing the essential duties of his job or even attempting to measure how his complaints interfere with his ability to perform the duties of his job. (0679-0689). Specifically, Dr. Duffy's May 12, 2008 Physical Capacity Examination ("PCE") concluded that Spiegel was only capable of sitting for two (2) hours a day (0672), but the PCE did not include any references to exercise physiology tests, physical examination results, or any other objective tests to provide the basis for the limitations listed. Dr. Duffy simply made conclusory statements such as "there is no way [Spiegel] could reliably get up and go to work each day, let alone function on the job for 6-8 hours" (0584) that remained unsubstantiated by any objective medical testing or evidence. Dr. Duffy's medical records do not include any exercise or treadmill tests to measure Spiegel's purported fatigue. Even Spiegel's treating rheumatologist, Dr. Asters,

acknowledged during a telephone conversation with independent medical review consultant, Dr. David Knapp, that Spiegel's complaints were "subjective with [no] objective findings."[2]  (0380, 0649).  Finally, there was no neuropsychological testing performed to measure Spiegel's inability to concentrate due to fatigue.

Spiegel also argues that since his treating physicians diagnosed him with CFS and opined that he was unable to return to work and therefore, Hartford must credit those opinions.  But Hartford was not required to "accord the opinions of a claimant's treating physicians 'special weight,' especially in light of contrary independent physician reports."  *Hobson*, 574 F.3d at 90; *see also, Black &Decker Disability Plan* v. *Nord*, 538 U.S. 822, 832-34 (2003).  Moreover, Hartford is allowed to "value the opinion of its independent physician above the opinion of Plaintiff's physician" and these determinations are neither arbitrary nor capricious.  *Solaas,* 2005 WL 735965, at *3.  It is also worth reiterating that each of the four medical peer review consultants who reviewed the matter, at both the initial claim stage and the appeal stage, considered Spiegel's subjective complaints, yet independently concluded that Spiegel's medical records lacked any objective evidence to substantiate his claim that he was functionally impaired from performing the essential duties of his occupation.  (*See* Defendant's Memorandum of Law, Point II, A.1.).

Furthermore, the administrative record reflects that Spiegel's own level of activity was greater than he represented, suggesting that he was physically capable of performing the sedentary duties of a telecommunication engineer.  Although Spiegel attempts to minimize his involvement in salsa dancing, this is belied by the record.  He continuously engaged in salsa dancing from March to June 2008.  (0504, 0564, 0683).  He even passed a salsa dancing test on May 12, 2008, which suggests that Spiegel was actively attending classes as well as practicing at home.  (0501, 0665).  This

---

[2] This is clearly a typographical error in the note excluding the word "no" given the negative results of Dr. Asters' rheumatologic evaluation.  Thus, the sentence should read Spiegel's complaints were "subjective with no objective findings."

can hardly be construed as "an abortive, short-lived, and ultimately unsuccessful effort by Spiegel to engage in normal activity" as he argues in his Motion/Opposition.   (Doc. No. 26, p. 5, n.4). Notably, the record shows that Spiegel was also taking drum classes, an activity which also involves a high level of physical exertion, energy and concentration.  (0573).  Since the administrative record lacks sufficient objective proof supporting Spiegel's claimed limitations due to fatigue or cognitive impairment, Hartford's determination that he was not disabled under the terms of the Plan as of September 24, 2008 should be upheld because the decision was not arbitrary and capricious.

## POINT IV

### SPIEGEL RECEIVED A FULL AND FAIR REVIEW OF HIS CLAIM

Spiegel argues that Hartford's review of his claim was deficient in several respects.  First, he claims that Hartford failed to comply with ERISA's notice provision.  Second, Spiegel contends that Hartford's review was incomplete because it did not conduct an IME.  Third, Spiegel faults Hartford for retaining independent medical review consultants to assess disabling conditions that he did not claim to be the basis of his disability.   Fourth, Spiegel objects to the declarations of Giuseppina Gulino and Bruce Luddy on the grounds that they are outside the administrative record, although these declarations only address administrative issues, not the substance of the underlying administrative review.  For the reasons set forth below, these arguments are all unavailing.

### A.   HARTFORD COMPLIED AND/OR SUBSTANTIALLY COMPLIED WITH ERISA'S NOTICE PROVISION

ERISA Section 503(1) requires that that the "plan administrator provide the claimant with 'adequate notice in writing . . . setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.'"  29 U.S.C. §1133(1); *Hobson.*, 574 F.3d at 87; *Schnur*, 2010 WL 1253481, at *12.  The Second Circuit has held that substantial compliance with ERISA Section 503(1) is sufficient to meet the requirements of a full and fair review.  *Burke* v. *Kodak Ret. Income Plan*, 336 F.3d 103, 107-09 (2d Cir. 2003).  "Substantial compliance 'means that the

beneficiary was 'supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'" *Hobson*, 574 F.3d at 87; *Schnur*, 2010 WL 1253481, at *12.

Spiegel argues that Hartford did not advise him what proof constituted sufficient objective evidence in its initial denial letter in order to put him on notice of what proof he needed to submit to have his claim reinstated. Hartford's denial letter fully complies with that requirement. Thus, Spiegel's argument appears to be nothing more than an excuse for his inability to come forward with sufficient proof demonstrating his alleged disability.

Initially, it must be noted that Spiegel's argument is contrary to the record, which demonstrates that Hartford's initial denial letter dated September 24, 2008 specifically indicates that his benefits were terminated because Hartford "determined that [he] did not meet the policy definition of Disability"; i.e. that he was "prevented from performing one or more of the essential duties of [his] occupation." (1046, 1048). Spiegel was further informed that "you do not have a clinical or subjectively rated degree of impairment from a physical condition that would alone preclude you from engaging in physical activity. From a physical standpoint, the medical information contained in your claim file does not support your inability to work 8 hours a day." (1050). The September 24, 2008 denial letter also stated that "you would have no restrictions with hours worked in a day or capacity to sit/stand/walk, amount to carry/lift/push/pull, drive, climb balance, stoop, kneel, crouch, crawl, reach at any level or finger/handle/feel. Your records do not document clinically significant objective medical impairments which would support any psychiatric restrictions or limitation, including the ability to work full time." (1050). Additionally, Hartford noted in this letter Dr. Asters' conclusion that Spiegel's "complaints [were] subjective with no objective findings." (1050). The September 24, 2008 denial letter concluded by stating that "[t]he combined information in your file does not show that you are unable to perform the essential duties

14

of your occupation as of 09/22/2008" and "[a]s a result [Spiegel's] claim [was] terminated effective 9/23/08." (1050). Accordingly, Hartford complied with ERISA's requirement that it advise Spiegel in writing of the reasons for its decision and the proof needed to support his claim on appeal.

In addition to the foregoing, the administrative record (which was provided to Spiegel's counsel) demonstrates all of the steps that Hartford took to obtain the information and proof it needed to assess Spiegel's claim on administrative appeal and therefore, Hartford substantially complied with ERISA's requirements for a full and fair review. The independent medical peer reviewing consultants also discussed what they believed necessary and communicated directly with Spiegel's treating doctors on this point. The independent peer review consultants reports were provided to Spiegel in full, and on administrative appeal, Hartford made further requests for medical records it believed might be relevant to Spiegel's appeal.

The independent medical peer review consultants' reports demonstrate that they spoke with Spiegel's treating doctors about his condition and their reports further identified the information that they would find supports his claimed disability. Specifically, Dr. Knapp spoke with Drs. Duffy and Asters regarding Spiegel's medical records. (650). Also, Dr. Darrel spoke with Dr. Duffy about Spiegel's medical records. (649). By letter dated November 19, 2008, Spiegel also requested a copy of the claim file, which was received by his counsel and which contained the medical consultant's review reports. (303-04). In his report, Dr. Darrel noted that there:

> has been no psychological testing or referral to a psychiatrist for evaluation in order to obtain more objective data and diagnostic clarification with respect to chronic fatigue syndrome versus a somatoform or other disorder(s). No exercise tests or graded exercise therapies are documented, nor has psychotherapy, specifically of the cognitive-behavioral type, been attempted in conjunction with the other modalities mentioned.

(648). Dr. Knapp similarly noted the lack of medical records noting any "clinically significant medical or orthopedic impairments requiring restrictions and limitations that would interfere [with] the number of hours worked in a day or the capacity to sit, stand, walk in the workplace, amount

claimant can carry, lift, push and pull, drive, climb, balance, stoop, knee, crouch, crawl, reach at waist level, above shoulder level and below waist level, handle, finger and feel." (652).

Moreover, after Spiegel administratively appealed, Hartford sent him a letter dated June 15, 2009 requesting additional medical records and office notes from Dr. Duffy as of May 13, 2008, as well as any other treating physician as of January 1, 2008. (1053). Although Spiegel complied with this request by submitting Dr. Duffy's supplemental medical records from May to September 2008 and a PCE completed on May 12, 2008, these documents again failed to reference any physical examination or other objective testing as required by Hartford in its initial denial letter dated September 24, 2008 to prove that Spiegel was unable to perform the essential duties of his occupation. (0561-97, 0665-69, 0672-73). Consequently, Hartford upheld the original denial of Spiegel's claim for continuing LTD benefits on appeal because "there are no psychological or cognitive restrictions or limitations identified which would preclude [him] from working, and Dr. Bress felt that he could physically work full time at the light level of exertion as of September 24, 2008 and beyond." (1044). Since Hartford adequately notified Spiegel as to why his benefits were terminated and identified the information necessary for him to submit in order to have his benefits reinstated, Hartford substantially complied with ERISA's notice requirements and Spiegel received a full and fair review. *Hobson*, 574 F.3d 75; *Schnur*, 2010 WL 1253481, at *12.

**B.      HARTFORD WAS NOT REQUIRED TO OBTAIN AN IME TO EVALUATE SPIEGEL'S CLAIM FOR CONTINUING PHYSICAL DISABILITY**

Spiegel contends that Hartford did not provide him with a full and fair review because it did not obtain an IME. It is well-established that if an IME is not required by the Plan, a claims administrator need not obtain one before denying a claim for benefits. *See Gannon*, 2007 WL 2844869, at *13 ("Aetna was not required to employ a physician to conduct an independent [ ] examination of the plaintiff, although it had the right to do so."); s*ee also Maniatty* v. *Unumprovident Corp.*, 218 F. Supp. 2d 500, 504-05 (S.D.N.Y. 2002).

In *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75 (2d Cir. 2009), the plaintiff argued that the claim administrator must obtain an IME, rather than a medical record review consultant's opinion, to assist in its evaluation of a claim. *Id.* at 90-91. The Second Circuit rejected this argument, stating that:

> [A]s the four circuits that have addressed the question have concluded, where the ERISA plan administrator retains the discretion to interpret the terms of its plan, the administrator may elect not to conduct an IME, particularly where the claimant's medical evidence on its face fails to establish that she is disabled.

*Id.* at 91. The Second Circuit further stated:

> We share the Seventh Circuit's concern that requiring the plan administrator to order an IME, despite the absence of objective evidence supporting the applicant's claim for benefits, risks casting doubt upon, and inhibiting, "the commonplace practice of doctors arriving at professional opinions after reviewing medical files," which reduces the "financial burden of conducting repetitive tests and examinations."

*Id.* (citing *Davis* v. *Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006)).

It was well within Hartford's discretion to determine that no IME was required in order for it to fairly consider Spiegel's claim on the initial review level and on appeal. As such, this argument is meritless.

## C.   HARTFORD REVIEWED ALL CO-MORBITIES TO ENSURE THAT SPIEGEL WAS NOT ENTITLED TO LTD BENEFITS UNDER THE PLAN

In order to ensure that Spiegel's claim for LTD benefits was properly reviewed, Hartford retained four independent medical record peer review consultants – two at the initial claims stage and two during the administrative appeal — to assist in its review of Spiegel's claim. Spiegel argues that the employment of three of the four independent review physicians was unnecessary because they evaluated conditions he did not allege to be disabling. (Doc. No. 26, p. 7). Specifically, Spiegel alleges that Dr. Milton Jay's neuropsychological review, Dr. Darell's psychiatric assessment, and Dr. David Knapp's "orthopedic" assessment were all "strangely mis-directed" because Spiegel's claim for LTD benefits was based solely on CFS. (Doc. No. 26, p. 7). Spiegel is mistaken and his

arguments on this point are another "straw man" he erects in order to avoid the actual arguments Hartford made in its summary judgment motion.

Dr. Jay's neuropsychological review was needed to assess Spiegel's claim for LTD benefits since he alleges that he was disabled due to CFS and *impaired mentation*. (Pl.'s Am. Compl. ¶6) (emphasis added). In his medical record review report, Dr. Jay observed that Dr. Duffy's medical records did not indicate that any cognitive tests were performed. (0506). He specifically indicated that "it appeared that [Dr. Duffy's] impressions of cognitive disturbance were based upon the subjective report of the claimant, without clinical examination evidence." (0507). Dr. Jay concluded that "significant cognitive disturbance was not evident for the claimant as of 9/24/08 and beyond in time . . . In my estimation, this was not an adequate basis of evidence for formal impairment determination regarding cognitive functional capacity." (0507-0508).

While Spiegel argues that he never claimed to be disabled by depression, Dr. Darell's psychiatric evaluation was performed because people who are diagnosed with CFS may actually be suffering from undiagnosed depression. Furthermore, Spiegel's treating doctors identified depression as one of his disabling conditions and therefore, Hartford had reason to believe that this may have been the basis for his disability. (117-18, 215-16). Indeed, even Dr. Duffy, Spiegel's treating doctor, advised Dr. Knapp, the independent peer review consultant, that "he believes an element of depression is playing a role" in Spiegel's condition. (0649). Hartford wanted to ensure that Spiegel's condition, although excluded as pre-existing condition under the LTD Plan, would not affect his ability to work. (1090). Dr. Darell concluded that "there was a lack of convincing, objective evidence to substantiate the claimant's being functionally impaired to the point of inability to work, certainly from a psychiatric standpoint." (0646).

Hartford also referred Spiegel's claim file to independent physicians who evaluated whether CFS physically prevented Spiegel from performing the essential duties of a telecommunication

engineer.  Spiegel incorrectly contends that Dr. Knapp, who is board certified in internal medicine, with a sub-specialty certificate in rheumatology, provided an unnecessary orthopedic assessment. However, Spiegel neglects to recognize that Dr. Knapp's report specifically addressed whether CFS, Spiegel's alleged disabling condition, would physically prevent him from returning to work.  Even Spiegel's own treating physicians acknowledged the importance of a rheumatologic evaluation as Dr. Duffy referred him to Dr. Dimitrios Asters for a rheumatologic consult.  (0649).  Notably, the results of his rheumatologic evaluation were negative and Dr. Asters also noted that Spiegel's complaints were "subjective with [no] objective findings."  (0380, 0649).  Dr. Knapp concluded that Spiegel's medical "records do not document clinically significant objective medical impairments which support any physical restrictions and limitations, including the ability to work full time."  (0652).

Interestingly, Spiegel failed to reference the results and/or conclusions reached by Dr. James Bress, board certified in internal medicine, which focused on a physical assessment of Spiegel's alleged disabling condition.  (0499).  Dr. Bress noted that there were significant inconsistencies in the fatigue reported by Spiegel.  (0504).  "The claimant is capable of doing salsa dancing which is a lively form of Spanish dancing and he 'passed his dancing test' on 5/12/08 consistent with the ability to stand and walk and dance for significant periods of time for pleasurable activities."  (0504). Thus, Dr. Bress concluded "that the claimant is capable of full time light work with no restriction of sitting, frequent standing, walking, bending, crouching, stooping, kneeling, maximum lifting of at least 20 lb from 9/24/08 through the present based on his physical/organic problems."  (0504).

It is evident that Hartford sought a thorough assessment of Spiegel's disabling condition by taking into account all of his claimed co-morbidities.  Hartford therefore provided Spiegel with a full and fair review of his claim.

**D.    THE COURT MAY CONSIDER HARTFORD'S SUPPORTING DECLARATIONS REGARDING STEPS TAKEN TO REDUCE CONFLICT OF INTEREST**

Spiegel does not argue that a financial conflict of interest actually affected Hartford's decision-making on his claim.  (Doc. No. 26, p. 3).  In *Metropolitan Life Insurance Co.* v. *Glenn*, 128 S.Ct. 2343 (2008)("*MetLife* v. *Glenn*"), the U.S. Supreme Court addressed the issue of whether a structural conflict of interest must be considered by a reviewing court when an insurer both insures the plan and is also granted discretion to make claims decisions for benefits under the plan.[3]  The Court held that conflict of interest is one of "several different considerations" a court must weigh when reviewing an adverse benefit determination.  *Id.* at 2351.  On its motion for summary judgment, Hartford submitted the Luddy and Gulino Declarations in order to affirmatively demonstrate that its decision-making was not influenced by conflict of interest.

The Supreme Court's ruling in *MetLife* v. *Glenn*, as well as recent holdings by the Second Circuit, establish that Defendants are entitled to submit proof outside of the administrative record addressing the conflict of interest factor as a separate issue from the underlying claim review on the administrative appeal.  In *MetLife* v. *Glenn*, the Supreme Court recognized that in certain situations, an insurer may be able to reduce or completely eliminate the potential for conflict of interest to influence its decision-making, observing that:

> It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision[-]making irrespective of whom the inaccuracy benefits.

*Id.* at 2351.

---

[3] In *Conkright* v. *Frommert*, the Supreme Court observed, in reference to *Glenn* that "when the terms of the Plan grant discretionary authority to the [claim] administrator, a deferential standard of review remains appropriate, even in the face of a conflict." *Conkright* v. *Frommert*, 130 S.Ct. 1640 (2010).

In *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008), the Second Circuit first interpreted *Glenn* as permitting courts to accept and consider evidence outside the administrative record on the issue of conflict, including law review articles and other case decisions to ultimately determine whether the defendant had a history of "abusive tactics."   Indeed, in *McCauley*, the Second Circuit criticized the insurer's failure to offer any evidence that it had taken steps to reduce potential bias, such as evidence regarding its "internal procedures," and found that its decision-making was "influenced by its conflict of interest."   *Id.*

After *McCauley*, declarations similar to the Gulino and Luddy Declarations, which address steps taken by an insurer/administrator to reduce the effect of any potential influence of conflict of interest, have been accepted and considered by courts in order to determine whether conflict of interest considerations actually affected the claim administrator's decision-making or if it had taken active steps to reduce any potential bias to "the vanishing point."   In fact, the U.S. District Court for the Eastern District of New York recently considered similar declarations and found them to be persuasive on this point.   *See Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*, 637 F.Supp.2d 132, 144 (E.D.N.Y. 2009) (relying upon the contents of similar declarations to find that, in light of the efforts taken by Hartford to 'wall-off' its claims examiners from the company's finance department and other steps taken to insure a fair and accurate review process, "the alleged structural conflict of interest carries no weight in the Court's review of Hartford's determination."). The U.S. District Court for the Southern District of New York also considered and found similar declarations informative as to the weight that should be accorded to the conflict of interest factor. *Schnur* v. *CTC Communications Corp. Group Disability Plan*, No. 05-cv-3297(RJS), 2010 WL 1253481, *11 (S.D.N.Y. March 29, 2010 (relying on declarations of the Appeals Team Leader and the Appeals Committee member responsible for handling the claimant's administrative appeal to find that the claims administrator "engaged in the sort of 'walling off' that was appropriate to minimize any

potential conflict of interest."). *See also Miller* v. *Hartford Life and Accident Ins. Co.*, No. 08-cv-2014(RWS), 2010 WL 1050006, *5 (N.D. Ga. Mar. 17, 2010); *Bendik* v. *Hartford Life Ins. Co.*, No. 03-Civ-8138(LAP), 2010 WL 2730465, *5 (S.D.N.Y. July 12, 2010) (*citing Fortune* in support of its finding that "the Eastern District has held that as a company Hartford has effectively 'walled-off' claims examiners from the company's finance department by ensuring that an examiner's compensation is not determined by reference to his or record in denying claims.")(internal quotation marks omitted).  Since the Declarations of Bruce Luddy and Giuseppina Gulino were submitted for the exclusive purpose of demonstrating that Hartford's adverse benefit determination was not influenced by a conflict of interest and they do not seek to add to the substantive administrative record, the Court is permitted to consider these declarations on the conflict of interest issue.

## <u>CONCLUSION</u>

For the foregoing reasons, it is requested that plaintiff's cross-motion for summary judgment be denied and that Hartford's motion for summary be granted.

Dated:  New York, New York
          July 30, 2010

Respectfully Submitted,

s/_____
Michael H. Bernstein (MB 0579)
SEDGWICK, DETERT, MORAN & ARNOLD LLP
**Attorneys for Defendant**
*HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY*
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
[SDMA File No. 2489-000049]

## <u>CERTIFICATE OF SERVICE</u>

I, MICHAEL H. BERNSTEIN, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served via ECF on this 30th day of July, 2010, upon the following:

> Harold Skavronsky, Esq.
> Law Offices of Harold Skovronsky
> 1810 Avenue N
> Brooklyn NY 11230
>
> Business E-mail:  lawhs@aol.com

> s/ _____
> MICHAEL H. BERNSTEIN (MB 0579)

Dated:     New York, New York
           July 30, 2010